ROGER JAMES RICE, Plaintiff, *v.* EDWIN BREHM, Defendant.

Supreme Court, Albany County, August 23, 1935.

John O. Bates, for the plaintiff.

C. Raymond Burton [John H. Broderick of counsel], for the defendant.

A. V. S. Cochrane, Official Referee.   In the year 1927 Charles S. Rice, the owner of about eighty acres of land in the town of Schodack, N. Y., conveyed to the defendant a small portion thereof containing forty rods and seventy-nine square feet.   The deed restricted the defendant from erecting or using any building on the property conveyed " as a public garage or filling station " and provided that for a violation of such restriction the deed should be void and the land described therein should revert to the grantor.

In 1932 said Charles S. Rice executed to defendant another deed of the same premises the declared purpose of which was to correct an error in the description of the premises in the former deed and also to substitute for the provision therein that for a violation of said restriction the premises should revert to the grantor the following provision, viz.: " And this conveyance is made subject to said restriction and covenants and shall be construed as covenants running with the land and shall be binding upon said party of the second part, his heirs and assigns forever."   Such deed restated the restriction contained in the former deed against constructing or using a building as a public garage or filling station.

Between the execution of said two deeds to defendant said Charles S. Rice conveyed to a number of different parties small portions of his eighty acres, each deed containing similar restrictions as in the deeds to defendant against garages and filling stations except that in deeds to one Rose and to one Barnett the language of the restrictive clauses was different, that of the latter being against " a public repair garage or repair garage."   Plaintiff is the successor in title to all of said eighty acres not conveyed by said Charles S. Rice as aforesaid.

In 1933 defendant constructed a building on the premises conveyed to him as aforesaid and is using it not for the storage of automobiles but for repairing them for hire.   Neither is he operating a filling station.   He bases his right to repair cars for hire on the meaning of the word " garage."   He contends that its meaning is limited to the *storage* and does not include the *repairing* of cars. This contention is apparently based on the definition of the word as contained in certain dictionaries.   But the word is of comparatively recent date in our language and those definitions were formulated when automobiles were few in number and garages

were almost unknown and the automobile industry was in its infancy. With the rapid expansion of the industry and the corresponding development of the number and sizes of garages and the various uses made of them, the meaning of the word " garage " has experienced a corresponding expansion and development and the lexicographers are revising their definition accordingly. Thus the Century Dictionary now contains the following definition of the word " garage," viz., " A station in which motor-cars can be sheltered, stored, repaired, cleaned, and made ready for use; also, a place of private storage for a motor-car."

The above definition is now contained in " Words and Phrases," fourth series, volume 2, page 142. And in *Abbott* v. *Steigman* (263 Mass. 585, at p. 588; 161 N. E. 596) the court said: "A garage erected for the purpose of selling oil, tires and other automobile accessories usually sold in a public garage, and for the repair of tires, is to all intents and purposes a public garage, as distinguished from a private or community garage, and the trial judge in substance so found. He rightly ruled that such use was a violation of the restriction."

I think that in the common speech of people garages are buildings where cars may be repaired. It is a matter of common observation that scattered throughout the country beside most any main thoroughfare are numerous buildings, large and small, displaying over their entrances the word " garage " where cars are repaired and in many instances that is the main if not the only business contained therein. On the trial of this action there occurred a striking instance of the fact that this building under consideration would ordinarily be regarded as a garage. Defendant's counsel was cross-examining the witness Baker and in questions and answers counsel and witness each repeatedly called the building a garage. This is not mentioned in criticism but merely as an illustration of the point that people would naturally think and speak of the building as a garage.

That defendant understood that the restriction in his deed prevented him from repairing cars is evident from the following facts. In the year 1921 he occupied a building of his grantor on the property subsequently conveyed to him on which building appeared the sign " Point Garage " and where he repaired cars for hire. Beginning in the year 1927 and continuing until he constructed the building in question in 1933, he conducted the business of repairing cars in another building on the premises of plaintiff which also displayed the sign " Point Garage " and defendant testifies, " I remodeled that garage," and again, " I put the sign ' Point Garage ' on it." So that although there is no claim that

he used that building for any other purpose than to repair cars as he is using the building under consideration, he nevertheless conducted that business under the title of " Point Garage " and in his testimony above quoted characterized the building as a garage. He also accepted a written lease of the building which spoke of it as a garage. Furthermore it must be apparent that the grantor would not preclude defendant from conducting the less obnoxious business of storing cars, as the latter now claims, and permit him to conduct the more obnoxious business of repairing them.

I recognize the principle that doubts and ambiguities in restrictive clauses are to be resolved against the grantor, but cases which declare that principle also assert the effort of the courts to ascertain the intent of the parties as in all other contracts. (*Bull* v. *Burton*, 227 N. Y. 101, 111; *Clark* v. *Devoe*, 124 id. 120, 124; *Peterson* v. *City of New York*, 235 App. Div. 41, 44; *Schuman* v. *Schechter*, 215 id. 291, 293; *Kitching* v. *Brown*, 180 N. Y. 414, 427.) In the last-mentioned case it was said in speaking of restrictive covenants, " The primary rule of interpretation of such covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement, but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met." The evidence leaves no doubt that the grantor of the deeds to the defendant intended to restrict him from repairing cars and that the defendant so understood it.

The defendant stresses the circumstance that in a deed to one Rose and in another deed to one Barnett the same grantor used the expression " repair garage " in the restrictive clause and argues that the grantor would have used the same expression if he had intended to restrict defendant from repairing cars. This is not the correct inference. The use of the expression " repair garage " indicates that the grantor understood a garage to be a building where cars are repaired and he distinguished between repairing and storing cars. So when, for instance, in the Barnett deed he used the expression " repair garage " he did not thereby prevent him from using a garage for storage or housing purposes but only for repairing purposes. In the case of defendant he used the general expression " public garage " which includes both housing and repairing.

Defendant alleges as a further defense that the character of the locality, due to the erection of certain structures, has changed to such an extent as to make the remedy by injunction inequitable. To this there are several answers. *First*, all the changes occurred

before the last deed to defendant wherein the restrictive clause was reaffirmed and the penalty for violation thereof changed except that since said last deed there has been erected on land of plaintiff, and consequently removable at his pleasure, a filling station which certainly is no more objectionable than an old barn which the evidence shows it replaced. *Second*, as before stated, there is, and was when the first deed to defendant was given, a public garage on the land of his grantor and one purpose of the restriction evidently was to protect him from competition in conducting that garage and no other public garage has been erected except that of defendant. *Third*, generally speaking and irrespective of the foregoing reasons, the changes have not been of such a nature as to make applicable the rule invoked. The locality is not a city or village but a country community although rather closely settled. Plaintiff's land, still containing most of said eighty acres, lies on both sides of two highways and is bounded by a third. Defendant's garage occupies a prominent and somewhat elevated position in the angle formed by two highways and is nearly opposite plaintiff's residence and plainly visible therefrom and is nearer than any other structure to a large portion of plaintiff's land except that there are on his land, and, therefore, removable at his pleasure, some of the advertising signs and other structures complained of. None of the structures are as objectionable as the repair garage. If plaintiff should desire to sell portions of his land it seems to me that this garage would prove a hinderance. The rule invoked applies where the purpose of the restriction has been thwarted by subsequent building operations or other changes and where an injunction would for that reason be of little or no benefit to the dominant owner. (*Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311; *McClure* v. *Leaycraft*, 183 id. 36.) Such is not the case here. This restriction is still of value to the plaintiff.

The plaintiff is entitled to judgment restraining the defendant from operating his building as a public garage, including the repairing of automobiles for hire, together with costs of the action.